MINNIE JENSEN, A WIDOW, ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

172 N. W. 2d 607

Filed November 28, 1969. No. 37115.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., Ted L. Schafer, and Gary R. Welch, for appellant.

Lyle E. Strom, William T. Caniglia, C. L. Robinson,

and Fitzgerald, Brown, Leahy, McGill & Strom, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

In this condemnation action the State appeals from a jury verdict and judgment of $101,056.50 for damage to the plaintiffs' 73.86-acre tract of land, occasioned by the taking of a diagonal (northwest-southeast) strip of 16.86 acres for the construction of a State highway. We affirm the judgment of the district court.

The first contention of the State is that the verdict is not supported by the evidence. There is ample competent evidence admitted without objection by the State, and cumulatively corroborated by witnesses as to whose foundation for testifying was not objected to, to sustain the following facts: The plaintiffs are the owners of a 73.86-acre rectangular tract of land on the northwest side of Omaha, Nebraska. The property is located on the west side of Ninetieth Street, adjacent to the south side of the City of Irvington, Nebraska. The Jensen family has occupied and lived on the property continuously since 1925. The taking of the 16.86-acre diagonal tract across the property was September 23, 1966. The whole tract was undeveloped at the time but areas to the east, north, and south of the plaintiffs' property had been developed and were variously zoned as residential and commercial. The evidence of all of the witnesses shows that the installation of the highway which gave rise to this condemnation action not only cuts diagonally through the Jensen tract of land but has made drastic changes in the topography of the land. Deep cuts and fills have been made to maintain a level highway. As a result, portions of the property are below the grade level of the highway and other parts above it. It appears that the primary potential use of the property is residential with some areas to be developed commercially. There is also

a small triangular portion of the tract that has been made inaccessible by the taking because of the installation by the State of a concrete drainageway. This area is between ¼ to ½ acre in extent.

There is ample evidence to sustain a finding that the highest and best use of the property on September 23, 1966, was for residential and commercial development as a unit. A detailed plan for such development of the property was prepared, introduced in evidence, and testified to by the expert witnesses in the case. The evidence shows that this plan was in harmony with the developing use of the property in the whole area. The evidence is that this plan for the development of the property which was feasible at the time of the taking in September 1966 has now been destroyed because of the diagonal fragmentation of the property and also because of the lack of access due to the installation of the highway. Persuasive competent evidence is to the effect that the remainder would now have to be developed in two separate tracts, because of the diagonal fragmentation of the whole tract by the installation of the highway.

Detailed expert testimony shows that the taking would require substantial additional expenditures in three different areas, namely sanitary sewer construction, the moving of utility and gas pipe lines, and grading.

Prior to the taking by the State the sanitary sewers would generally have flowed and followed the streets in a downhill direction over the northeast corner of this property. In the development of this property after the taking it will be necessary to carry these sewers under the new highway and it will be necessary to install a lift or pump station to carry the sanitary sewers up the hills. Extra sanitary sewers will have to be constructed under the highway, of more expensive material, and will need to be installed by tunneling rather than in an open ditch. There is competent evidence that the additional cost of the sanitary sewer construction will be in the neighborhood of $15,000, and in addition

the cost of grading allocable to the remaining acres is greater per acre than the cost of grading would have been before the taking.

The gas pipe lines will have to be adjusted on both sides of the highway. The pipe lines will have to go directly under entrances permitted by the State and it will be necessary to grade over them. Four hundred feet of pipe lines will have to be raised on the north side of the highway in the remainder tract. Pipe lines on the south side of the highway will have to be adjusted to grade by excavating down and lowering the pipes 10 to 12 feet. The State objected to a question soliciting the cost for this pipe line adjustment, but as the objection was sustained, we are without the benefit of the exact cost of this necessary adjustment.

Changes in grading due to State dictated access requirements, and other changes necessary because of the extensive cut and fill activity in the construction of the highway, will result in the taking and removal of an additional 55,000 cubic yards of dirt if the property is developed separately. It is also clear that street alignment in the development of the property into two tracts will be substantially changed because the State in its taking dictates the entryways into the State right-of-way.

Summarizing, there is competent and persuasive testimony in this record establishing the following definite factors which a willing buyer would take into consideration and which would create a diminished value for the remainder: (1) The nature of the severance which is to diagonally partition the property and require the development into two entirely separate and relatively irregular tracts; (2) due to the creation of the deep fills and cuts in the establishment of the highway the relative topography of the whole tract is adversely affected and impaired; (3) extensive additional grading will be required to bring the property into a useable and saleable harmonious relationship for residential and commercial purposes, especially in light of the neces-

sity to correlate this with the extensive cuts and fills in the installation of the highway and the necessity to meet the State dictated requirements of access; and (4) the undisputed additional cost of the development of the utilities, the sanitary sewer system, and the removal of 55,000 cubic yards of dirt.

The valuation testimony of the plaintiffs' witnesses, Howard Jensen (one of the owners) and the expert appraiser, Mr. H. J. Grove, was admitted without objection either as to foundation or amount. The testimony of Jensen as to the value of the 16.86-acre tract taken was in the sum of $67,440 and the damage to the remainder was $85,395 or a total of $152,835. Grove testified as to a total damage of $142,660. This was based on a valuation of the 16.86 acres taken in the sum of $55,638 and a damage to the remainder in the sum of $87,022 or a total of $142,660. This witness included in his foundation testimony a consideration of 25 to 30 sales dating from 1960 to 1967 and particularly 6 sales that appropriately cross-sectioned the neighborhood, all of which took place subsequent to 1963. The State's expert testified that the total damage was in the sum of $42,993, *and testified there was no damage at all to the remainder.*

It is apparent from the detailed recital of the evidence herein given that there is ample evidence to support the finding of the jury and the judgment of the court. The contention of the State in this case, especially in light of the undisputed foundation testimony and the evidence, to which no objection was made, as to valuation on the part of the plaintiffs' witnesses amounts to a request that this court enter its de novo determination of the amount of damages independent of the jury's determination. This, of course, we may not do. As many times happens in condemnation cases the jury verdict fell in between the valuations of the different expert witnesses.

Expert opinion evidence in a condemation case, as in

all other cases, is to be considered and weighed by the triers of fact like any other testimony. It is only advisory in nature and is not binding upon the jury or the court. The weight and credibility of the testimony of either lay or expert witnesses is for the jury. The amount of damages sustained in an eminent domain action is peculiarly of a local nature and ordinarily is to be determined by the jury, and this court will not ordinarily interfere with the verdict if it is based upon admissible testimony. Evans v. State, 176 Neb. 156, 125 N. W. 2d 541; Schmailzl v. State, 176 Neb. 617, 126 N. W. 2d 821; Connor v. State, 175 Neb. 140, 120 N. W. 2d 916; Iske v. Metropolitan Utilities Dist., 183 Neb. 34, 157 N. W. 2d 887; Schimonitz v. Midwest Electric Membership Corp., 182 Neb. 810, 157 N. W. 2d 548.

The evidence in this case is conflicting as to valuation. Under well-known principles of law in eminent domain cases a verdict of the jury will not be set aside unless it is shown to be clearly wrong. In determining this issue in a condemnation case we have said that a verdict may not be set aside as excessive except where it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or the controlling rules of law. Schimonitz v. Midwest Electric Membership Corp., 182 Neb. 810, 157 N. W. 2d 548; Garska v. Harris, 172 Neb. 339, 109 N. W. 2d 529.

The State did not object to the admission of the testimony as to valuation of the expert witnesses in this case and is in no position now to impeach the foundation for it. Its position now, in effect, is to ask this court to impeach the foundation testimony and destroy the admissibility of this evidence in order to reach the conclusion that the evidence does not support the verdict. Otherwise its position must be taken as a flat request that this court evaluate the property independently and determine the credibility of the witnesses. This, of course, we cannot do.

An examination of the foundation testimony under the applicable rules as to admissibility of evidence in an eminent domain case reveals that the testimony had ample foundation under all of the accepted and required tests. The argument is made that the professional appraiser who testified in this case for the plaintiffs did not testify as to all of the possible factors which might influence buyers and purchasers of real estate. As we said in Evans v. State, 176 Neb. 156, 125 N. W. 2d 541, it is not necessary that a qualified witness in a condemnation case be familiar with every possible element that goes into the determination of market value. The market value of real estate is almost always a matter of opinion. In determining market value the experts themselves may vary as to the different factors that they consider compelling or dominant in reaching their final conclusion as to valuation. Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328; Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; 1 Orgel on Valuation under Eminent Domain (2d Ed.), §§ 132, 135, pp. 564, 580.

We come to the conclusion that the verdict was amply supported by the evidence and may not be overturned under any of the applicable rules relevant thereto and that this assignment of error and contention that the verdict is not supported by the evidence is untenable and without merit.

The State assigns as error the admission of exhibits 7 through 19, being color slides of the premises. Actually exhibits 7, 8, 12, 14, 15, 16, and 19 were the only ones admitted over the objections of the defendant and our discussion of this assignment of error will be confined to these exhibits. These exhibits generally showed the cuts and fills made during construction of a portion of the highway over the premises. At the time of the trial, the highway had not been completed. No paving had been done and some grading remained to be done. Therefore the only way the plaintiffs could present any

tangible or demonstrative evidence of the cuts and fills and other changes in the topography of the land, in order to support their theory of the case as to its detraction from the value of the remainder, was by the evidence of the condition of the land and of the highway in its uncompleted state. The State argues that the ditches showing the presence of machinery and the confusion and debris incident to the construction activity is a temporary inconvenience or damage, is not compensable, and it was therefore prejudicial to admit such exhibits or pictures in evidence. Lybarger v. State, 177 Neb. 35, 128 N. W. 2d 132. The difficulty is presented by the necessity of the trial court permitting the plaintiffs to introduce competent evidence to support their theory of the case and at the same time protect the State from the possibility of an unwarranted allowance of damages for an unrecoverable element in an eminent domain case. The answer to this challenge to these exhibits lies in the trial court's statement that they were received in evidence "only for the purpose of showing or illustrating any cuts or fills in the construction of the highway over the premises involved herein of plaintiff or formerly owned by plaintiff and only as such pictures may relate to the before and after value of the remainder other than the right of way of the road itself. They shall in no event be considered by the jury as evidence of any construction damage as construction damage such as nuisance (etc.), during construction is not claimed or an issue in this lawsuit." When the court submitted the case to the jury it also reiterated this admonition in instruction No. 26 in which it again suitably warned the jury of the limited purpose and application of these exhibits. The admission or rejection of photographs in evidence is largely within the discretion of the trial court and, in the absence of a showing of abuse of discretion, error may not be predicated upon such ruling. Peterson v. Skiles, 173 Neb. 470, 113 N. W. 2d 628; Markey v. Hunter, 170 Neb. 472, 103 N. W. 2d 221.

The trial court properly balanced the conflicting necessities of the situation, and since no abuse of discretion appears, this contention of the inadmissibility of the exhibits is without merit.

The State next challenges the allowance by the trial court of a $15,000 attorney's fee under section 76-720, R. R. S. 1943. Plaintiffs' attorney, Mr Strom, testified that the fee arrangement which the firm had with the Jensen family was substantially in conformity with the statute. Much of the argument and the discussion of the evidence contained in the briefs deals with a dispute as to the amount of and the necessity for the number of hours that plaintiffs' attorneys spent on the case, and the necessity of having two lawyers participate in the trial of the case. *The State had two also.* We feel it unnecessary to detail the testimony in this respect. These are only two of the factors involved in determining a reasonable attorney's fee under the applicable statute. The testimony as to the value of these services being in the sum of $15,000 was supported by other expert testimony that the services were worth between $15,000 and $20,000.

We have said many times that in the determination of a reasonable attorney's fee there should be considered the importance of and the result of the case, the difficulties thereof, the degree of professional skill demonstrated, the diligence and ability required and exercised, the experience and professional training of the attorney, the difficulty of the questions of fact and law that are raised, and the time and labor necessarily required in the performance of those duties. Darnell v. City of Broken Bow, 139 Neb. 844, 299 N. W. 274, 136 A. L. R. 101; Stephens v. Allied Mutual Ins. Co., 182 Neb. 562, 156 N. W. 2d 133. We have also said that the allowance of a reasonable attorney's fee for necessary services performed by an attorney will not be reversed on appeal in the absence of a showing of an abuse of discretion by the trial court in making the allowance. State ex

rel. Sorensen v. Bliss, 123 Neb. 620, 243 N. W. 877. Testimony was received in the hearing regarding this issue in the district court as to each one of the elements above recited as being pertinent to the determination of a reasonable attorney's fee. The State introduced no adverse testimony. The evidence amply supports the allowance of $15,000 as a reasonable attorney's fee in this case, when all of the circumstances and the applicable rules of law involved are considered, and we can find no abuse of discretion in the allowance made herein. This contention is without merit.

For the reasons stated, the judgment of the district court is correct and is affirmed.

AFFIRMED.