ARDEN N. JOHNSON ET AL., APPELLEES, v. NEBRASKA PUBLIC POWER DISTRICT (FORMERLY CONSUMERS PUBLIC POWER DISTRICT), A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.

191 N. W. 2d 594

Filed November 12, 1971.   No. 37786.

Wilson, Barlow & Watson and Ted L. Schafer, for appellant.

Schmid, Ford, Mooney, Frederick & Caporale, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

In this eminent domain action, the defendant power district appeals from a judgment for the landowner plaintiffs of $28,800, asserting excessiveness of the jury verdict, instructional error, and improper argument to the jury. We affirm the judgment of the district court as modified.

The defendant's seven 2-pole structures (345,000 volt transmission line) were placed on a 150-foot wide easement in cultivated farm land, and cut diagonally for 5,677 feet across the 320-acre generally level, highly improved, single, integrated, unified corn and livestock farm operation of the plaintiffs. The farm is located in the northeast corner of Fillmore County, at or near the junction of York, Fillmore, Seward and Saline counties. Two-hundred and eighty acres are cultivated, and 240 acres are under irrigation. The farm is bordered by three good graveled farm-to-market roads, has 40 acres of hay and pasture, building areas, excellent soil (Hastings silt loam), and supports cattle feeding operations of 350 to 400 head. The 2-pole structures are diagonal to and crossways with all section lines and crop rows and none are on fence lines, next to roadways, or the natural division of fields. The 150-foot easement is broad in scope. Enjoyment by the plaintiffs is subject to unlimited access for survey, additional construction or reconstruction, operation, repairs, maintenance, relocation, etc.

Was there prejudicial error from improper argument of plaintiffs' counsel to the jury? In essence, plaintiffs' counsel argued that the taking prevented the installation of the center-pivot method of irrigation which would increase the corn production of the cultivated

land by 35 to 50 bushels per acre. The argument then proceeded to an opinion relating the monetary value of the increased yield to the value of the land at the time of the taking. The premise of the argument was the increased productivity of the land from center-pivot irrigation installation. It did not assume or relate to any profit figures or analysis of the farming or crop production as a whole. It was not within the prohibition of showing or arguing profits condemned by James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273, modified, 136 Neb. 456, 286 N. W. 337.

Three witnesses had testified *without objection* that the farm was adaptable, at the time of the taking, in the immediate future to the use of the center-pivot irrigation system, and testified, again without objection, to an increased corn yield of 35 to 50 bushels per acre from such installation, all of which was prevented by the diagonal power pole structure taking.

We said in Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168, as follows: *"The market value of property includes its value for any reasonable use to which it may be put.* If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which made up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating compensation. *The proper inquiry is, what is its fair market value in view of any reasonable use to which it may be applied and all the reasonable uses to which it is adapted?"* (Emphasis supplied.)

In Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865, where evidence as to the price of units of gravel was held admissible, this court said: "The owner may show all reasonable uses to which he thinks the lands are adaptable and *what the lands are worth in view thereof.* If, as a result thereof, there is conflict in whether the lands are adaptable for certain use it is up

to the jurors to determine which of the two views they believe." (Emphasis supplied.)

The plaintiffs' evidence as to greater productivity of plaintiffs' farm through use of the center-pivot system of irrigation was offered and received in evidence without objection by defendant. Under these circumstances error cannot be predicated upon such evidence. State v. Dillon, 175 Neb. 444, 122 N. W. 2d 223; Jensen v. State, 184 Neb. 802, 172 N. W. 2d 607. It therefore follows that error cannot be predicated upon comment and argument by counsel on such evidence and any reasonable inferences therefrom.

We observe that the thrust of the defendant's argument on this point is that counsel's argument fixed a maximum valuation of the damage at $60,000 to $70,000. It argues forcibly that there was no testimony which would support a $70,000 valuation. However, there was testimony and evidence of damage of $64,000. We observe that the court instructed the jury to disregard all statements of counsel which were not supported by the evidence. Even assuming that counsel's argument was in error we fail to see any prejudice. It would appear, since the verdict was less than 50 percent of the estimate of the plaintiffs' expert witnesses and of counsel, that the jury relied on other evidence and reasoning as to valuation. To require a new trial, it must be shown that the alleged improper argument was such as to prejudice the substantial rights of a party. Anderson v. State, 184 Neb. 473, 168 N. W. 2d 383.

Moreover, the defendant did not, *at any time,* move for a mistrial. This is fatal to a complaint that counsel's argument was misconduct. We recently said in Vacanti v. Montes, 180 Neb. 232, 142 N. W. 2d 318, as follows: "One may not complain of alleged misconduct of adverse counsel if, with knowledge of such alleged misconduct, he does not ask for a mistrial but consents to take the chances of a favorable verdict." See, also, Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293; Dunn v. Omaha

& C. B. St. Ry. Co., 139 Neb. 765, 298 N. W. 741; Pieper v. City of Scottsbluff, *supra*.

Error in instruction No. 10 is asserted, chiefly because it is claimed that the jury was limited to a consideration of the center-pivot irrigation system's adaptability.

Since this was a major issue in the evidence in the case, the court quite properly instructed on it. But the court did not limit the jury's inquiry. In this and other instructions the court properly instructed the jury as to the elements of damage and that the jury's inquiry was to determine the fair market value in view of any reasonable use to which the land might be adapted. In cautionary language the court told the jury that it could not speculate as to whether or not the land was adaptable to center-pivot use. It told the jurors they must find from the evidence that it was adaptable to such use prior to the taking; that since the taking it was not adaptable; and that such adaptability affected the market value on July 21, 1969, the date of the taking. It specifically told the jury that such adaptability must be found to be reasonably probable, and not merely possible. It carefully cautioned them that such adaptability must be reasonably expected in the "immediate future" so as to affect market value at the time of the taking. See NJI No. 13.05, and cases cited thereunder. We find no error in the instruction.

We have examined the other contentions of defendant as to error in instructions, and they are without merit. The court properly limited adapted uses of the land to those "reasonably occurring in the immediate future" which would affect market value. (Instructions Nos. 6, 8, and 10.) See, Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209; Pieper v. City of Scottsbluff, *supra*. Defendants requested instruction No. 9, forbidding consideration of reasons special to the owner in valuing the land, which was covered by the court in instruction No. 16. Instructions Nos. 1 and 13 accurately recited the issues and correctly stated the law.

The verdict is attacked as excessive. We are dealing here with a large and valuable integrated farm unit. At a minimum the record supports a valuation of around $500 per acre, and runs as high as $720 per acre. The 150-foot diagonal easement with the present seven 2-pole structures running diagonally for over a mile across the farm is obviously a substantial factor affecting market value. The record supports, almost conclusively, that operation of the present irrigation systems will be materially inconvenienced and impeded in operation. With larger modern machinery and power units, aerial spraying of fertilizer, nutrients, and insecticides, and the large scale movement of tubing and irrigation equipment, the diagonal easement will realistically impair normal ground operations on the farm. Beyond this, the record strongly supports a conclusion that it cannot now be adapted to the use of an irrigation system (center-pivot) substantially increasing productivity. These are but a few of the factors in evidence before us for review.

The testimony as to the center-pivot system is conflicting, although admitted without objection. Much of the rest of the testimony as to inconvenience, interference, and danger as affecting market value is undisputed. A local jury viewed the premises. The jury was properly instructed. It is not contended that the verdict was the result of passion and prejudice. It was well within the range of the conflicting expert testimony as to valuation of damage. The verdict was less than one-half of the valuation testified to by plaintiffs' experts. It invites the suggestion that the jury actually disregarded much of the testimony discredited by the defendant. We are governed by the following rules: The weight and credibility of the testimony of both lay and expert witnesses as to the amount of damages sustained by the landowner is peculiarly of a local nature to be decided by the jury and the verdict will not be overturned if it is based on the testimony. Connor v. State, 175 Neb. 140, 120 N. W. 2d 916; Lansman v. State, 177 Neb.

119, 128 N. W. 2d 569; Iske v. Omaha Public Power Dist., 185 Neb. 724, 178 N. W. 2d 633; Timmons v. School Dist. of Omaha, 173 Neb. 574, 114 N. W. 2d 386; Chaloupka v. State, 176 Neb. 746, 127 N. W. 2d 291. The fact that the jury had an opportunity to inspect the property was of significance in determining whether the verdict was excessive. Iske v. Omaha Public Power Dist., *supra*. When evidence in condemnation proceedings is conflicting, the jury's verdict will not be set aside unless clearly wrong. It is not for the reviewing court to decide which testimony the jury should believe. Connor v. State, *supra;* Timmons v. School Dist. of Omaha, *supra;* Deitloff v. City of Norfolk, 183 Neb. 648, 163 N. W. 2d 586.

The contention that the verdict is excessive and clearly wrong cannot be sustained.

The defendant complains of an allowance under section 76-720, R. R. S. 1943, of an attorney's fee in the sum of $5,000 and an allowance for expert witnesses' fees in the sum of $2,500. The matter of an allowance of an attorney's fee under this statute is discretionary. From the record, it is quite apparent that a portion of the $5,000 attorney's fee allowed was for services rendered in connection with the hearing before the appraisers in county court. The court overruled objections to a showing of these servicess and apparently considered them in making this award. Although we have not categorically so held, it is clear that the statute does not permit an award of an attorney's fee for services prior to the initiation of an appeal in district court. The statute says: "If an appeal is taken * * * and the amount of the final judgment is greater by fifteen percent than the amount of the award * * *." It is clear that the allowance is conditional. The services of the attorney and the expert witnesses must be related to the accomplishment of these conditions precedent as set up by the statute. We have inferentially so held in Anderson v. State, 184 Neb. 467, 168 N. W. 2d 522; Hughes Farms, Inc. v. Tri-State Generation & Transmission Assn., Inc., 182

428

Neb. 791, 157 N. W. 2d 384. See, also, § 76-720.01, R. R. S. 1943.

Under the circumstances herein we determine that a reasonable fee for the plaintiffs' attorney in the district court is the sum of $4,000. We observe that only one attorney's fee is allowable but there is no prohibition to the assistance of additional necessary counsel depending upon the difficulty, complexity, and the necessary time required to adequately represent the condemnee. In the matter of expert witnesses' fees, the evidence is undisputed. The defendant offered no rebuttal testimony as to the value of the services of the plaintiffs' expert witnesses. The evidence shows that at the time of the hearing the sum of $2,235.21 had been paid to the witness Smith and $529.20 to the witness Licht. The court awarded the sum of $2,500 to the plaintiffs for expert witnesses. We see no abuse of discretion in this allowance. See, Anderson v. State, 184 Neb. 467, 168 N. W. 2d 522; Jensen v. State, 184 Neb. 802, 172 N. W. 2d 607.

The judgment and verdict of the district court in the sum of $28,800 for the plaintiffs is affirmed. The allowance of an attorney's fee in the sum of $5,000 is modified and reduced to the sum of $4,000. The allowance of $2,500 for expert witnesses' fees and expenses is affirmed. Costs of this appeal are taxed to the defendant.

AFFIRMED AS MODIFIED.