STATE OF NEBRASKA, APPELLEE, V. LARRY L.
HENGGELER, APPELLANT.

260 N. W. 2d 495

Filed December 21, 1977.   No. 41403.

Michael T. Levy, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

Defendant was charged with the offense of burglary to which he entered a plea of not guilty.   Trial was had to a jury and a guilty verdict returned.   Defendant filed a motion for a new trial which was overruled.   The District Court sentenced defendant to a term of 3⅓ to 10 years imprisonment in the Nebraska Penal and Correctional Complex.   Defendant appeals.   We affirm the judgment and sentence of the District Court.

James R. Stanek, a truck driver employed by Cur-

tis, Inc., testified that he arrived at the Curtis premises around 10:30 p.m. on the evening of January 1, 1977, for the purpose of picking up a trailer of meat. As he approached the parking lot he noticed a pickup truck parked in front of the office door. He parked his truck at the gate of the truck parking lot, approximately 20 to 30 yards away, and observed the pickup truck to determine whether it was occupied. Shortly thereafter, he noticed a party walking toward and into a cooler located in the building. He observed this party for 3 or 4 seconds and described the party as wearing a baseball cap and coveralls and having a mustache.

Stanek decided to get the license number of the pickup truck and drove his vehicle behind the pickup truck, approached the front of the pickup, and wrote down the license number. Upon returning to his vehicle, he observed two juveniles lying across the front seat of the pickup truck. He drove his truck to the far end of the truck parking lot, hooked up his trailer, and continued his observation.

Stanek then contacted the authorities on his CB radio about a possible break-in at the Curtis plant. He then observed a party emerge from the cooler with one or two boxes in his hands. As the party opened the cooler door he noticed Stanek at the far end of the lot, threw the boxes back into the cooler, stepped back, and pulled the cooler door shut. About 3 or 4 minutes later the same party opened the cooler door about a foot, looked out to see if Stanek was still there, closed the door, and remained in the cooler for another 5 minutes. He then emerged from the cooler for a third time, closed the door, fiddled with the lock, and casually walked toward the pickup truck.

About 3 or 4 seconds after Stanek lost sight of the party, a police cruiser arrived at the Curtis plant. Officer James Krzemien approached the pickup truck and questioned the defendant. In response to

a question, the defendant indicated that he had called about the possible break-in, but that it was only a couple of kids running through the area. Officer Krzemien then allowed defendant to drive off.

Upon seeing that the police had released the defendant, Stanek got out of his truck, approached the officer, and told him that he, Krzemien, had just released the party that he, Stanek, had observed entering and leaving the cooler.

The defendant was subsequently apprehended and returned to the Curtis plant where he was identified by Stanek as the party he had observed entering the cooler. Stanek testified that he identified the defendant as the party he had observed entering the cooler based upon his clothing and facial features. He identified the defendant, as the party he saw, in court and testified that he was the same height, race, and build as the party he observed.

Evidence was introduced that the door to the meat cooler at the Curtis plant had been tampered with and that several cartons of meat had been moved from where they were observed the previous day. Officer Gutchewsky examined the interior of defendant's pickup truck and observed various heavy tools. Officer Gutchewsky also stated that no CB radio was found in defendant's truck.

When interrogated at the police station following his apprehension concerning his purpose for being at the parking lot of the Curtis plant that evening, defendant stated that he was there to meet another party for the purpose of working on the latter party's trailer. He refused to identify the party who was to meet him at this location. At the trial, defendant's son corroborated this story and a witness, Ray McPhillips, testified that he was the party defendant was to meet that evening.

As part of his case, defendant called Gerald Bishop, an expert witness in the field of photography, to the stand. Bishop was retained by the de-

fendant for the purpose of photographing a recreation of the scene at the Curtis plant. On February 11, 1977, at approximately 10:30 p.m., Bishop, the defendant, and others went to the Curtis plant to recreate the scene as it existed on January 1, 1977.

At the trial the court sustained an objection to having Bishop state his opinion based upon a hypothetical question posed to him as to whether the photographs taken by him would fairly and accurately reflect what a party such as Stanek could have observed on January 1, 1977, on the grounds that the attempted recreation was made 5 to 6 weeks after the fact, was not factually accurate, and could not be considered reliable by the jury. The court also, for the same reasons, sustained an objection to the introduction of the photographs into evidence. Defendant cites the sustaining of these objections as error.

"The admission or rejection of photographs in evidence is largely within the discretion of the trial court and, in the absence of a showing of abuse of discretion, error may not be predicated upon such ruling." Jensen v. State, 184 Neb. 802, 172 N. W. 2d 607 (1969). See, also, Peterson v. Skiles, 173 Neb. 470, 113 N. W. 2d 628 (1962). "Photographs are properly admissible as evidence if it be shown that they are true and correct representations of the place or subject they purport to represent at a time pertinent to the inquiry." Hansen v. Hasenkamp, 192 Neb. 530, 223 N. W. 2d 44 (1974). See, also, Markey v. Hunter, 170 Neb. 472, 103 N. W. 2d 221 (1960).

Bishop admitted that he had no personal knowledge of the conditions which existed on the premises as of January 1, 1977, and that he did not know if the conditions were the same on January 1 and February 11, when the photographs were taken, regarding the amount of overcast or dimness or lightness. Each of Bishop's photographs was taken with a 1-second exposure. Bishop admitted that since Stanek

had observed the scene for a period of several minutes and not just 1 second, conditions might have changed considerably while Stanek was looking. Bishop stated that the results of his photographs would be different if he had used a different speed film and a different shutter speed. Bishop admitted that the only one who could say with any certainty that the photographs which he took fairly and accurately represented what the witness Stanek saw on January 1 would be the witness Stanek.

It is the duty of the trial court to control the propounding of hypothetical questions to expert witnesses and to regulate the form, length, and content of the questions. In the exercise of this power, the court exercises a judicial discretion which ought not be overridden unless it very clearly appears to have been wrongly exercised. Kresha Constr. Co., Inc. v. Kresha, 184 Neb. 188, 166 N. W. 2d 589 (1969). Great latitude is allowed the trial judge in ruling on the admissibility of a hypothetical question. Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N. W. 2d 643 (1973). " 'Determination of admissibility generally rests within the sound discretion of the trial court.' " State v. King, 197 Neb. 729, 250 N. W. 2d 655 (1977). See, also, State v. Brown, 190 Neb. 96, 206 N. W. 2d 331 (1973). "The admissibility of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld unless an abuse of discretion is shown." Dovey v. Sheridan, 189 Neb. 133, 201 N. W. 2d 245 (1972).

There was no abuse of discretion by the District Court in sustaining objections to the introduction of the photographs into evidence and to Bishop's opinion testimony concerning what these photographs represented. There is no merit to these contentions.

Defendant's last contention is that he received an excessive sentence. Defendant received a sentence of 3⅓ to 10 years imprisonment in the Nebraska

Penal and Correctional Complex.

The presentence report shows that defendant has a lengthy arrest record having, since 1955, been arrested over 70 times. He has been previously convicted of a felony. His probation officer concluded that he was not an acceptable candidate for probation.

The record shows that defendant owns and manages a tree service which grosses $28,000 to $30,000 annually, owns a camper storage business, and works as a diesel mechanic earning an additional $650 to $750 per month. Defendant steadfastly denies any involvement in the burglary that led to his conviction. The record also shows that defendant's two sons, aged 13 and 15, accompanied him on this escapade and were arrested as a result on a charge of loitering or prowling.

Defendant's sentence was within the statutory limits and, as such, will not be disturbed on appeal absent an abuse of discretion. State v. Holloman, 197 Neb. 139, 248 N. W. 2d 15 (1976). We find no abuse of discretion in defendant's sentence.

The judgment and sentence of the District Court are correct and are affirmed.

AFFIRMED.