STEPHEN SCHIMONITZ ET AL., APPELLEES, V. MIDWEST ELECTRIC MEMBERSHIP CORPORATION, APPELLANT.

157 N. W. 2d 548

Filed March 22, 1968. No. 36742.

Frederick E. Wanek, for appellant.

Firmin Q. Feltz, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action by Midwest Electric Membership Corporation, hereinafter referred to as defendant, to acquire by condemnation through the power of eminent domain an easement across Section 1, Township 12 North, Range 35 West of the 6th P.M., in Keith County, Nebraska, owned and farmed as a unit by Stephen Schimonitz and Martha Schimonitz, hereinafter referred to as plaintiffs.

A jury returned a verdict assessing plaintiffs' recovery at $9,840. The district court entered judgment on the verdict in the amount of $12,784.48, which included an allowance of $2,200 for attorney's fees. Defendant has perfected an appeal to this court.

Defendant seeks an easement 100 feet wide diagonally across plaintiffs' section for the erection of a 69,000 volt transmission line embracing 10 H-type structures. These structures are set at distances varying from 540 feet to 770 feet. The power line enters on the north line of Section 1 at a point 1,714.08 feet east of the northwest corner thereof, and runs diagonally across said section for 6,336.8 feet to a point on the east line 125 feet from the southeast corner. The power line actually crosses three quarter sections, the northwest quarter, the northeast quarter, and the southeast quarter. The H-type structures consist of two wooden poles 55 feet in height, set on 10 feet 6 inch centers, cross-braced. There is a

wooden crossarm 24 feet in length supporting three electric conductors composed of 26 strands of aluminum and 7 strands of steel. The minimum clearance of this line will be 21 feet.

Testimony indicates that the area taken out of production because of the poles would approximate 225 square feet per structure. The entire easement area involves 14.55 acres. The easement requested is for a perpetual right-of-way for the erection, construction, reconstruction, replacement, removal, maintenance, repair, and operation of an electric transmission line, with the right of ingress and egress whenever necessary, as well as the right to control any trees, brush, or shrubs on said strip or adjacent thereto which may interfere with the maintenance of said line.

Defendant's petition of taking contains the following: "* * * and the owners and the lessees retain the use of said land under said line and between said structures and the applicant obligates itself to pay all future crop damages incident to the construction, maintenance and reconstruction of said line when and if such damages occur. The right of ingress and egress will be exercised in the manner suggested by the occupant of said premises, but if applicant deems that manner improper then it will enter within 50 feet of the center line of said easement, installing, maintaining and using gates where necessary in all fences which now or might hereafter cross or be adjacent to said right-of-way."

Defendant sets out eight assignments of error. We will discuss only those we deem pertinent.

It seems to be defendant's theory that consideration of damages herein should be limited solely to that portion of plaintiff's farm where the use has actually been restricted, and that the jury could consider therefor only the diminished value of the land actually embraced in the easement. In addition to the fact that there is no merit to that position, the jury was properly instructed on the correct rule, which actually was the theory on

which the case was tried. Ordinarily, this court will dispose of a case on appeal on the theory on which it was presented to the trial court by the parties. Durfee v. Keiffer, 168 Neb. 272, 95 N. W. 2d 618.

A condemnee is entitled to recover full compensation for the land actually taken, if any was taken, and for such damages to the residue of the land as are equivalent to the diminution in the value thereof. Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833.

In this case, the only property actually appropriated for the exclusive use of condemner is the area upon which the structures were erected, which involves less than 1 acre. However, the easement involves a strip 100 feet wide and 6,336.8 feet long, or 14.55 acres, running diagonally across the section. It is patent that this perpetual easement would necessarily diminish the value of the entire section as well as the area embraced in the easement.

In a condemnation proceeding under the power of eminent domain where the land is not taken the measure of damages is the difference in the reasonable market value before and after the damaging, taking into consideration the uses to which the land was put and for which it was reasonably suitable. Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209.

Defendant in its brief calls attention to its self-imposed obligation to pay all future crop damage incident to the construction, maintenance, and reconstruction of the power line situated on the easement when and if such damages occur, in an effort to mitigate any damages suffered by the plaintiffs as the result of the taking of the easement. They do not argue this point, but merely point it out. This point is adequately covered in Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355, at page 866, and no further comment herein is necessary.

The defendant claims that the verdict is excessive.

814

Defendant's two expert witnesses fixed the damages at $530 and $1,000. Plaintiffs' three expert witnesses fixed the damages from $26,240 to $32,800. Plaintiff, Stephen Schimonitz, fixed the damages at $26,240. The award in county court was $5,795.50. The verdict of the jury herein was $9,840. The rule is that the amount of damages sustained by a landowner for a right-of-way condemned across his land is a question of a local nature, proper to be determined by a jury of the county, and this court ordinarily will not interfere with the verdict if it is based on the evidence in the case. Kennedy v. Department of Roads & Irrigation, 150 Neb. 727, 35 N. W. 2d 781.

Plaintiffs' witnesses were substantial landowners in the locality who were well acquainted with local conditions. Defendant's experts were real estate brokers, one from the locality and one from Grand Island, Nebraska. The qualifications of the witnesses who testified were established, and while there was marked disagreement between the witnesses for the plaintiffs and those for the defendant as to the market value of the land after the appropriation, it is evident that the figures given by defendant's experts were so unrealistic that the jury did not believe them. The jury verdict is well within the range of the testimony. The evidence of plaintiff's witnesses was pertinent to the issue and it would be arbitrary and without justification for this court to substitute its judgment for that of the jury.

The plaintiffs' land before the taking was adaptable to irrigation using the valley system, a self-propelled sprinkler system in common use throughout the area. This is a system where the sprinkler is mounted on a pipe suspended upon wheels driven in a circle around a centrally located pivot point. Plaintiffs' evidence is that this system could not be used after the taking, and while a portion of the area could be irrigated by pipes or a skid tow sprinkler, this would be as effective and would be more expensive.

When the evidence is conflicting, the verdict of a jury will not be set aside unless it is shown to be clearly wrong. Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355.

In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom. Sall v. Schnackenberg, 178 Neb. 699, 134 N. W. 2d 808.

A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake or that it is clear that the jury disregarded the evidence or controlling rules of law. Garska v. Harris, 172 Neb. 339, 109 N. W. 2d 529.

On the record herein it cannot be said that the verdict of the jury is excessive. There is no merit to this assignment.

Defendant claims the attorney's fee allowed by the trial court is excessive. Section 76-720, R. R. S. 1943, provides that if an appeal is taken from the award of the appraisers by the condemner and the amount of the final judgment is not less than 85 percent of the award, the court may in its discretion award to the condemnee a reasonable sum for the fee of his attorney. The award in county court was $5,795.50. The verdict of the jury was $9,840, or an increase of $4,044.50. The allowance of an attorney's fee was proper herein. It is the amount thereof which the defendant questions.

The minimum fee schedule of the Nebraska Bar Association provides in eminent domain proceedings if a fee is charged on a flat time basis the charge shall be governed by the same circumstances as in any other case, taking into account the amount and problems involved, and the experience and skill of the attorney. If the fee is contingent, and the case is tried on the merits, then the schedule provides the fee ordinarily should not exceed

50 percent of the increase over the offer before trial. In this case the offer was $1,000 and the jury verdict was $9,840. The fee allowed was $2,200. However, we do not interpret the reference in section 76-720, R. R. S. 1943, to a reasonable fee to mean a contingent fee. The fee contemplated by this section is one that is reasonably compensatory for the services rendered. There is no showing in the record of the time spent by counsel in preparation for trial or otherwise. The record indicates a trial of 2 days duration. Any fee allowed must be based on an estimate of the time and preparation required for the record before us. On this basis we determine a reasonable fee to be $1,500, and find the fee allowed by the trial court excessive to the extent of $700. We reduce the judgment of the trial court $700, and affirm the judgment as so reduced. Additionally, we fix the fee for services in this court at $750, and tax all costs to defendant.

AFFIRMED AS MODIFIED.