IRENE ANSON, ADMINISTRATRIX OF THE ESTATE OF ALBERT ANSON, DECEASED, APPELLEE, v. ABE B. FLETCHER ET AL., APPELLANTS, IMPLEADED WITH LARRY KIRSCHMER ET AL., APPELLEES.
IRENE ANSON, APPELLEE, v. ABE B. FLETCHER ET AL., APPELLANTS, IMPLEADED WITH LARRY KIRSCHMER, APPELLEE.
220 N. W. 2d 371

Filed July 18, 1974. Nos. 39254, 39255.

Jewell, Otte, Gatz, Magnuson & Collins, for appellants.

Mattson, Ricketts, Davies, Stewart & Calkins, for appellee Anson.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and FLORY, District Judge.

WHITE, C. J.

This is an appeal from two cases, consolidated for trial, in which the plaintiffs sought damages for an assault and battery. In the first case the District Court, after a jury trial, awarded $32,000 to the administratrix of the estate of the decedent, Albert Anson. Anson died after the suit was filed but before trial began. No wrongful death action was brought. In the second case, the District Court awarded Mrs. Irene Anson, the decedent's wife, $10,000 for loss of consortium. The

defendants Fletcher appeal, assigning error in the exclusion of evidence and that the jury verdicts were excessive. We affirm the judgments of the District Court.

The facts are as follows: On January 24, 1971, Glen Fletcher, one of the defendants in this action, was married, and a wedding party was held at the Two Rivers Steak House in Ewing, Nebraska. Present at the party were, among others, Abe B. Fletcher, the patriarch of the clan, Robin Fletcher, Glen's son, and Clarence and Edward Fletcher, Glen's brothers. All are defendants in this action. Members of the wedding party began drinking around 4:30 p.m. A small disturbance broke out among the guests before dinner, and a more major altercation erupted during the dinner at which time the proprietors of the steak house, Alex and Mark Thramer, attempted to evict Robin Fletcher. This triggered a brawl in which the Fletchers and other members of the wedding party attempted to prevent the eviction by assaulting the Thramer brothers. A call was placed to Albert Anson, marshal of Ewing.

Anson proceeded to the steak house and announced that he was the law and that he wanted some order. Glen Fletcher began to strike Anson at which point Anson attempted to place him under arrest. As Anson was trying to take Glen Fletcher away, Abe B., Clarence, and Edward Fletcher started to attack Anson. Clarence Fletcher put his arm around Anson's neck and pulled him backwards. Meanwhile Glen, Edward, and Robin Fletcher struck Anson. Abe B. Fletcher announced that no "tin badge" was going to tell him what to do and was heard to say, "Go get him (Anson), boys." Abe B. Fletcher not only incited the other defendants to beat up on Anson, but the evidence also shows that he struck Anson himself.

Glen and Robin Fletcher got Anson down on the ground and continued to hit and kick him. On two occasions Robin Fletcher climbed onto a car and from there jumped on Anson's back. When Anson was able

to regain his feet, he sprayed mace on Robin Fletcher and Larry Kirschmer, another assailant, whereupon Robin Fletcher got up and struck him again. At one point during the fracas, the Thramer brothers attempted to rescue Anson by pulling him away toward the steak house and standing in front of him. Glen and Robin Fletcher followed and attacked again, striking Anson and Alex Thramer. Shortly thereafter the fire whistle blew, the fire department arrived, and the crowd broke up. The assault lasted over a period of at least 20 minutes. Anson was beaten bloody and had to be taken away from the scene in an ambulance.

For their first error on appeal, the defendants Fletcher assert that evidence which constituted an admission by the plaintiff was improperly and prejudicially excluded by the trial court. The defendants Fletcher attempted to introduce into evidence certain testimony given by Anson at the preliminary hearing in the case of State v. Kirschmer. Specifically, the evidence offered from the record of the previous criminal hearing consisted of the following testimony:

"Q. Now, did you, in your testimony, you pointed at some marks on your face that you think that Larry did?

"A. I definitely know he hit me in the mouth where I have that scar.

"Q. How do you know that?

"A. Because he was the only guy that ever hit me in the mouth.

"Q. You can distinctly remember that?

"A. I can.

"Q. Even though you were on the ground?

"A. I was standing up.

"Q. Prior to this, you were on the ground, and people were kicking you in the head, is that right?

"A. On the side of my head.

"Q. And it went back and forth?

"A. To the side.

"Q.   And to this day you can identify one mark on your face as coming from that — coming from one particular —

"A.   It hurt the worst of any fist that hit me.

"Q.   Harder than when you were kicked in the head?

"A.   No, I would say the fist.

"Q.   Okay.   Who else hit you with their fist?

"A.   I was hit several times by the crowd, but I don't know who all, but they were all too drunk to hit too hard.   I could easily hold my own as long as I could stay on my feet."

The defendants Fletcher contend that it was prejudicial error to exclude their offer of this testimony as part of their case-in-chief.   The first ground for our holding that there was no prejudicial error by the District Court in excluding Anson's testimony, taken at the preliminary hearing in State v. Kirschmer, is that the defendants Fletcher waived their objection to the exclusion of most of the testimony, all except the answer to the last question, by actions later in the trial which were inconsistent with the objection.   At the beginning of the trial, the plaintiff offered Anson's testimony quoted above, excluding the answer to the last question.

Counsel for both Kirschmer and the defendants Fletcher objected.   The plaintiff then offered the same testimony only as against Kirschmer to which counsel for defendants Fletcher again objected.   The trial court sustained both objections.

Later, during the presentation of their case, defendants Fletcher made the offer of proof in question here, the same testimony of Anson from the State v. Kirschmer preliminary hearing as offered by the plaintiff earlier. This offer, included Anson's answer to the final question: "Q.   Okay, who else hit you with their fist?   A.   I was hit several times by the crowd, but I don't know who all, but they were all too drunk to hit too hard. I could easily hold my own as long as I could stay on my feet."   Only the codefendant Kirschmer objected

to this offer of proof which was sustained by the trial court.

Subsequently, at the conclusion of the trial testimony the plaintiff reoffered the testimony of Anson given at the Kirschmer preliminary hearing. Although the record is unclear on this point, we assume that the plaintiff merely repeated her original offer and that it consisted of the above-quoted testimony, minus Anson's answer to the last question. Defendants Fletcher and Kirschmer's objections were sustained.

We hold that the defendants Fletcher waived their objection to the exclusion of Anson's testimony, except his answer to the last question, because they objected to the plaintiff's offer of proof of the identical testimony after their own offer was rejected. "A party may waive or estop himself to object to the exclusion of evidence, * * *. An exception to the exclusion of evidence is waived by action of the party, after the ruling, inconsistent with the objection." 89 C. J. S., Trial, § 662, p. 508. We approved a similar statement of the rule in In re Estate of Kaiser, 150 Neb. 295, 34 N. W. 2d 366 (1948): "As stated in 64 C. J., Trial, § 189, p. 167: 'A party may, by his acts or omission, waive, or be estopped to make, objections to the admission or exclusion of evidence. Such waiver or estoppel may arise from failure to object, from acts done or omitted before the evidence is offered, as by failure to object to previous similar evidence, or from some affirmative act done after the ruling on the evidence."

The defendants Fletcher received an unfavorable ruling on their offer of the Anson testimony. In offering the testimony they presumably desired that it be admitted into evidence. Yet, when the plaintiff reoffered the identical testimony at the close of the trial, the defendants Fletchers' objection was sustained. This objection to the plaintiff's offer constituted an affirmative inconsistent act done after the ruling on the evidence which they are now assigning as error. This act con-

stituted a waiver of their original objection, and the defendants are now estopped from claiming that the exclusion of their offer was error. When both the plaintiff and the defendant desire the same evidence to be admitted at trial, and the defendant persists in objecting to the plaintiff's offers after its own offer has been rejected, the defendant cannot assign the exclusion of the evidence in question as error on appeal.

The operation of this waiver rule, however, does not estop the defendants from assigning as error the trial court's exclusion of Anson's answer to the last question in the Kirschmer preliminary hearing testimony. Defendants Fletcher contend that this testimony constituted an admission by a party on a material issue and that its exclusion was reversible error. While we agree that admissions by a party on material issues are admissible, we are of the opinion that the testimony at issue here does not constitute an admission. "Admissions are words and conduct of a party opponent offered as evidence against him. An admission against interest is admissible when it contravenes a position taken upon trial by the party making the admission." Sheets v. Davenport, 181 Neb. 621, 150 N. W. 2d 224 (1967). The first aspect of Anson's answer to the last question, which the defendants argue contravenes plaintiff's position at the trial, is the implication that Anson could not precisely identify his attackers. The suggestion here is that others besides the defendants Fletcher participated in the beating. This, instead of contravening the plaintiff's position at the trial, appears to bolster it. The plaintiff's theory of the case was not only that the defendants Fletcher assaulted and battered Anson, but they aided and abetted others, and incited others to assault Anson. The aiding and abetting instruction was given to the jury without objection. The fact that others hit Anson tends to prove that procurement of the assault by the defendants Fletcher was successful. Since Anson's testimony did not contravene the plaintiff's

position at trial, it did not constitute an admission, and the trial court was correct in excluding it.

The second part of the offer of proof at issue here is the statement by Anson that the members of the crowd "were all too drunk to hit too hard." Again, this statement is not inconsistent with plaintiff's position at the trial. It is elementary tort law that there is a cause of action for any battery, hard or soft, and that the defendants are liable for all damages resulting therefrom. In reference to the statement in question, the defendants cite the case of Havlik v. Anderson, 130 Neb. 94, 264 N. W. 146 (1936). In that case the defendant had offered to prove that the plaintiff had made an extrajudicial statement to the effect that "he was not hurt much, but thought he ought to have a little settlement." In reversing, this court held that since the extent of the plaintiff's injuries was a material issue in the case, it was prejudicial error to exclude the evidence in question. We believe that Havlik v. Anderson, *supra,* is clearly distinguishable from the case now before us. Anson never intimated that he was hurt only slightly. The fact that Anson's attackers "were all too drunk to hit too hard" does not mean that he was not injured to the extent asserted by the plaintiff. The evidence as to Anson's injuries is undisputed and uncontradicted. Nor did the defendants challenge any of the other elements of the damages proved by the plaintiff. Furthermore, not all of Anson's injuries resulted from being hit. Evidence also showed that Robin Fletcher twice jumped from a car onto Anson's back and that Anson was thrown to the ground and kicked several times. This aspect of Anson's testimony did not contravene the plaintiff's position regarding the amount of damages due and did not constitute an admission.

Even assuming that Anson's testimony was admissible as an admission, or under some other theory (e.g. the prior reported testimony exception to the hearsay rule), its exclusion was not so prejudicial to the defendants

as to deny them a fair trial. Jim Anson, the decedent's son, and Alex and Mark Thramer, co-owners of the steak house where the beating occurred, were all eye-witnesses who testified for the plaintiff. Their testimony is substantially the same and shows conclusively that the defendants Fletcher attacked Anson and were other-wise responsible for his extensive injuries. In view of such overwhelming evidence, we cannot say that the Fletchers' defense was in any way prejudiced by the rejection of their offer of proof. At best, their offer was cumulative to all the other evidence showing that others including the Fletchers attacked Anson. It is fundamental that a trial court has broad discretion to exclude cumulative evidence. We find no abuse of dis-cretion in the trial court's exclusion of this evidence.

For their second contention of error on appeal, the defendants claim that the verdicts here are so clearly excessive that it is the duty of this court to set aside the verdicts and order a new trial. Where recovery is to be had for such subjective elements as the mental anguish caused by a humiliating beating, and the pain and suffering resulting therefrom, an appellate court ought to be very reluctant to substitute its judgment for that of a jury whose function it is to fix recovery. "It appears from our cases that where the recovery was not a mere matter of computation, and depends upon the intangible and quite subjective elements of pain and suffering and future disability, that it will not be interfered with unless it is so grossly unresponsive to the evidence as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury, or unless it appears to be based upon some oversight, mis-take, misconception, or misinterpretation, or a considera-tion of elements not within the scope of the accident." Stewart v. Ritz Cab Co., 185 Neb. 692, 178 N. W. 2d 577 (1970).

Albert Anson lived for 10 months after the beating. For his assault and battery cause of action, the adminis-

tratrix of his estate was awarded $32,000 in damages. The evidence suggests that lost earnings consisted of $5,000 and medical expenses totaled. $1,131.35. The balance of the verdict, $25,868.65 represents compensation for the physical pain and mental distress due to the humiliating beating itself as well as the physical and mental pain and suffering over the following 10-month period.

"In testing the sufficiency of the evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Schimonitz v. Midwest Electric Membership Corp., 182 Neb. 810, 157 N. W. 2d 548 (1968). From this perspective the evidence shows that Anson suffered the indignity of a humiliating beating inflicted by a mob of attackers that consisted of repeated assaults continuing over a period of at least 20 minutes. During each of these assaults and batteries, he was in fear of life and limb, suffering both mental anguish and physical pain. The mental anguish resulting from a humiliating assault has been specifically recognized as compensable in Flinn v. Fredrickson, 89 Neb. 563, 131 N. W. 934. See, also, Schmidt v. Richman Gordman, Inc., 191 Neb. 345, 215 N. W. 2d 105. After the attack, Anson was diagnosed as having suffered a fractured rib, pneumonitis, and aggravation of a congenital unstable lower back, as well as traumatic tendonitis and facial lacerations. He complained of pain in his chest, lower back, legs, tailbone, and buttocks many times. Medicine to combat the continuing pain was prescribed on several occasions, and his doctor testified that he suffered approximately a 20 percent disability of his body. In addition to physical suffering, the evidence shows that Anson suffered mentally and emotionally and that this suffering continued until the time of his death. His family life was radically

altered and he grew increasingly depressed and withdrawn.

We have examined the totality of the circumstances, and in view of all the evidence, we are unable to hold as a matter of law that the jury abused its discretion in awarding $32,000 to Anson's estate. This court has recognized in the past that back injuries are particularly incapacitating and deserving of greater compensation. "* * * common human experience tells us that a disability to the body as a whole, involving the back and the pain and suffering incidental to the use and motion of the back, warrants a higher recovery." Stewart v. Ritz Cab Co., *supra*. Furthermore, nowhere is it claimed that the jury was improperly instructed with respect to the issue of damages; that it misinterpreted those instructions; or that it considered elements of damage not within the scope of the cause of action. Particularly in the highly speculative area of computing compensation for mental and physical pain and suffering, this court is unwilling to substitute its personal views for those of the jury. It is the jurors' function to determine the pecuniary equivalent of the injury here. This they have done, and we cannot say they clearly erred in their judgment.

The defendants claim also that the jury's award of $10,000 to Irene Anson for loss of consortium is excessive and unsupported by the evidence. Damages for loss of consortium represent compensation due to a wife who has been deprived of rights to which she is entitled by virtue of the marriage relationship, namely, her husband's affection, companionship, comfort, assistance, and particularly his conjugal society. The evidence, taken in a light most favorable to Mrs. Anson, shows that the last months of her marriage were unhappy due to the intentional injury inflicted on her husband by the defendants. Her family life and conjugal relations with her husband suffered, and she was clearly deserving of compensation. We are unable to say that

the jury abused its discretion in fixing the amount of this compensation. See Thill v. Modern Erecting Co., 292 Minn. 80, 193 N. W. 2d 298 (1971).

In summary, we come to the conclusion that there was no prejudicial error in the trial court's exclusion of evidence under the particular facts and that the jury verdicts were not excessive. The judgments of the District Court are correct and are affirmed.

AFFIRMED.