HARMONY LANES, A PARTNERSHIP, APPELLEE, V. STATE OF
NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

229 N. W. 2d 203

Filed May 22, 1975.  No. 39772.

Paul L. Douglas, Attorney General, Warren D. Lichty, Jr., and Dale L. Babcock, Jr., for appellant.

Smith, Smith & Boyd, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is a condemnation case involving the taking and damaging of plaintiff's property for highway purposes. The date of taking and commencement of the action was October 25, 1973. The county court appointed appraisers who returned an award for plaintiff in the sum of $22,832. The plaintiff appealed to the District Court. In the District Court the jury returned its verdict for the plaintiff for $57,500. The State of Nebraska, Department of Roads, has appealed from the District Court judgment entered on that verdict.

The plaintiff, Harmony Lanes, is a partnership whose partners are Margaret M. Thacker, Victor I. Bianchini, and Nancy M. Bianchini. Plaintiff is the owner of a rectangular tract of land located on the east side of Dakota Avenue within the city limits of South Sioux City, in Dakota County, Nebraska. Dakota Avenue runs north and south and is also U. S. Highway No. 77. The property is zoned industrial. The tract dimensions are 330 feet north and south and 620 feet east and west. On the west, access to Dakota Avenue was unrestricted and consisted of a 65-foot driveway and a 35-foot driveway. There are no other streets on the other three sides of plaintiff's property. The tract contained 4.7 acres prior to the taking.

There was a blacktopped parking lot 133 feet by 250 feet on the westerly side of the tract which accommodated 96 cars. There was an additional parking lot to the north which could accommodate 64 cars. A metal building faced with brick was located on the southerly portion of the property immediately east of the west

parking lot. Its north-south dimensions were 100 feet and east-west dimensions were 154 feet. Plaintiff's building contained a 16-lane bowling alley in the east portion of the building, with a snack bar and lounge located at the west end. The entrance to the building was on the west side between the snack bar and the lounge. The air conditioning equipment and the septic tank for the building are located on the south side of the building.

Plaintiff's property is being condemned for the construction of a new cloverleaf interchange for the interstate highway. The property actually taken by the State consists of a strip of land across the entire west side of the plaintiff's property, varying in width from some 54.20 feet at the south to 81.25 feet to the north. A chain link fence will be erected along the boundary, cutting off all direct access to U. S. Highway No. 77 from plaintiff's property. In addition, the State is taking a 20-foot strip of land along the south boundary which will be used as the north half of a new access road to U. S. Highway No. 77, which will serve plaintiff and other property owners to the east and south. The total area of land actually taken by the State is .78 acres. The taking will reduce the capacity of plaintiff's west parking area from 96 to 10 cars, and leave an area between the building and the new right-of-way which can be used as a driveway. The north parking lot will not be affected. The 20-foot right-of-way strip on the south line of the property passes over the septic tank serving the building and comes within 10 feet of the south edge of the building and within 3½ feet of the air conditioning unit and equipment. A storage shed on the south side of the building will also have to be moved.

There is substantial dispute in the evidence of the expert witnesses as to the necessity or feasibility of moving the entrance of the bowling alley from the west side to the north side and as to the costs involved, as well as to the amount of damage to the remainder of the property

resulting from the taking. One of the plaintiff owners testified that in his opinion the total amount of damages resulting from the taking and damaging of plaintiff's property was $140,000. One of the plaintiff's two expert witnesses testified that the total amount of damages resulting from the taking and damaging was $90,000. The other put the amount at $96,348. One of the defendant's two expert witnesses placed the amount of total damages at $25,032 and the other at $26,478.03. Testimony of plaintiff's two expert witnesses valued the property actually taken at $13,962 and $7,800 respectively. The defendant's two expert witnesses placed the value of the property actually taken at $7,080 and $10,848.48. The combined differences between plaintiff's and defendant's expert witnesses as to the value of the land actually taken were relatively minor. Major differences came in connection with the opinions as to damage to the remainder of the property. Plaintiff's expert witnesses placed the remainder damages at $76,000 and $96,000, while the defendant's two expert witnesses placed the remainder damages at $15,000 and $18,000. Expert valuations of the property before the taking varied from $285,000 to $391,000. The lowest estimate by plaintiff's witnesses was $356,000, while the highest estimate by the defense witnesses was $339,000. Values after the taking ranged from $258,000 to $314,000, both of which were by the defendant's witnesses. Plaintiff's witnesses valued the property after the taking at $266,000 and $294,000 respectively.

The jury returned its verdict for the plaintiff in the amount of $57,500. The District Court entered judgment for that amount, plus interest of $1,920.90; expert witness' fees of $575 and $750; and attorney's fees of $8,640, plus costs. The State has appealed.

The State's assignments of error are directed primarily at the admission of certain testimony into evidence. The State also asserts that the verdict is excessive and that interest, attorney's fees, and witness' fees were im-

properly allowed. It also challenges the jurisdiction of the District Court on appeal. There is no complaint as to any of the instructions to the jury.

The measure of compensation for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. Berlowitz v. State, 180 Neb. 164, 141 N. W. 2d 764. In the present case the opinions of all four of the expert witnesses, plaintiff's and defendant's alike, were directly expressed in compliance with that rule.

The State's objections are generally directed at the expert witnesses' testimony about various facts or information which were a part of the foundation for the expert opinion as to damages. The State complains, for example, about the admission of testimony by plaintiff's experts with respect to certain comparable sales in the vicinity. The contention is founded on the argument that the testimony as to these sales was offered as independent proof on the issue of value of plaintiff's property. The State exposes the invalidity of the assertion by arguing that each of the sales were adjusted by the witnesses and because they were adjusted, therefore they were not comparable. None of the sales here were presented as independent proof of the value of plaintiff's property. In fact, several of the comparable sales to which the State objects were used as comparable sales by its own expert witnesses. The testimony was relevant and it was open to cross-examination. The State's contentions on this issue are wholly unfounded.

The State also contends that the plaintiff's expert witnesses improperly included the value of leased bowling equipment and fixtures in determining remainder damage. The testimony of plaintiff's witnesses establishes that their opinions of remainder damage did not include any item or element of damage to bowling equipment or fixtures. It is also obvious from the testi-

mony that both plaintiff's and defendant's witnesses were including the value of bowling fixtures and equipment in their opinions of values before and after taking but were not including any damage to that property in their opinions as to remainder damage. Both plaintiff's and defendant's expert witnesses agreed that the highest and best use of plaintiff's property was for a bowling alley.

The value of property includes its value for any reasonable use to which it may be put. If because of its artificial improvements or its intrinsic character it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown. Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865.

The State complains further that much of the testimony of one of the expert witnesses and the testimony of one of the owners was improperly admitted because it dealt with special or particular use value of plaintiff's property as a bowling alley rather than value in general terms of market value. In a situation where virtually all the witnesses conceded that the highest and best use of the property was as a bowling alley, it is difficult to understand the State's complaint that some testimony as to damage to plaintiff's property is improper because it reflects an opinion based on a peculiar value for special reasons. The values that were used by the expert witnesses in expressing opinions were market values. Anything connected with the land which would influence the market value thereof in the mind of a good faith intending purchaser is an element for consideration in determining damages, and that rule applies to all instances of uses which follow the property taken or damaged. Fulmer v. State, 178 Neb. 20, 131 N. W. 2d 657. Use of the property here as a bowling alley did not create or provide any peculiar value for special reasons but was merely one of the uses, perhaps the best use, to which the property was reasonably adaptable. The

taking of property by condemnation subjects the State to liability for all damages sustained by reason of the taking. Those damages include all elements of inconvenience which affect the market value, the costs of restoration or adjustment to the changed conditions, and any material impairment or destruction of a right of access to a public highway. See Balog v. State, 177 Neb. 826, 131 N. W. 2d 402.

In a condemnation case, the weight and credibility of the testimony of lay or expert witnesses upon the issues of valuation and damages are for the jury. Iske v. Omaha Public Power Dist., 185 Neb. 724, 178 N. W. 2d 633. The amount of damages sustained in a condemnation action is peculiarly of a local nature and ordinarily is to be determined by the jury. Where the evidence is conflicting this court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. Iske v. Metropolitan Utilities Dist., 183 Neb. 34, 157 N. W. 2d 887.

The State also contends that because of certain alleged irregularities by plaintiff's counsel in connection with the appraisal award by the appraisers appointed in the county court, the nature of which is not disclosed by the record, the plaintiff lost any right of appeal to the District Court and the District Court had no jurisdiction. Those allegations have been disposed of in the case of Thacker v. State, *ante* p. 817, 229 N. W. 2d 197. The issues are identical and that case is controlling here.

Finally, the State contends that interest, expert witness' fees, and attorney's fees were improperly allowed. The allowance of interest is in direct compliance with section 76-711, R. R. S. 1943. The fees of the two expert witnesses who testified for the plaintiff here are not in serious dispute, and were properly allowed under section 76-720, R. R. S. 1943. The State, however, contends that the attorney's fees of $8,640 included services of more than one attorney, and at least some duplication.

The trial here took 3 days. An examination of the record and the affidavits as to services tends to establish some duplication and multiplicity of services and counsel. In Anderson v. State, 184 Neb. 467, 168 N. W. 2d 522, we said: "The statute contemplates but one fee and the amount allowed should be fixed as though the services were performed by one attorney unless the circumstances are such as to require the services of two or more attorneys." The record supports the conclusion that the award of attorney's fees here was based on an unnecessary multiplicity of counsel and some duplication and was therefore excessive. The combined allowance for attorney's fees in the District Court and in this court should be fixed at $6,000. The remaining assignments of error asserted by the State are without merit.

The judgment of the District Court is affirmed except as to attorney's fees. Plaintiff is allowed the total sum of $6,000 for the services of its attorneys in the District Court and in this court. Costs are taxed to the State.

AFFIRMED AS MODIFIED.