ALLEN WARD ET AL., APPELLEES, v. NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC., A COOPERATIVE CORPORATION, APPELLANT.

240 N. W. 2d 18

Filed March 25, 1976. No. 40211.

Kenneth M. Olds of Olds & Swarts, for appellant.

Bill Quigley of Quigley, Dill & Quigley, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Nebraska Electric Generation and Transmission Cooperative, Inc., an electric cooperative corporation organized under the laws of the State of Nebraska, with the power of eminent domain granted under section 76-704, R. R. S. 1943, appeals to this court from a jury award of $20,000 in a trial held in the District Court for Cherry County, in a condemnation proceeding. The

action was instituted by the appellant against the landowners, Allen Ward and his wife Mae T. Ward, to obtain a perpetual easement for the purpose of erecting and maintaining a 115,000-volt transmission line across certain real estate owned by the Wards near Valentine, Nebraska. We affirm.

At the outset, we wish to point out that in its petition for condemnation filed in the county court of Cherry County, and also in its pleading on appeal in District Court, appellant alleges: "Petitioner does not seek by these proceedings to take or condemn any land of the defendant, *except that actually displaced by the poles of said transmission lin*e and makes no claim of ownership of any of said real estate which is overhung by the cross arms, wires or other apparatus; that said petitioner seeks only the right to construct, operate and maintain said transmission line in the manner hereinbefore described, including without limiting the generality of said terms the right of ingress and egress within the easement area over the lands described herein as may be necessary in the course of the construction, maintenance and operation of the said line and removal of the same at the will of the petitioner, or its successor." (Emphasis supplied.) The foregoing language would appear to be susceptible to the interpretation that in addition to condemning an easement, appellant was also condemning the land itself on which the pole or structure of the transmission line rests. We do not believe this is so. Nowhere in the pleadings nor in the testimony is there any reference whatsoever to the amount of the area displaced by the poles and structures, nor is there any legal description of that property. The case was tried strictly on the theory that only an easement was involved in the condemnation procedure. Also, the court, in instructing the jury as to the proper way of determining "just compensation" to the Wards, instructed only with reference to the taking of an easement, stating that the measure of damage was the difference as of

August 31, 1973, between the fair and reasonable market value of the ranch lands owned by the Wards before the easement was taken and a fair and reasonable market value of the ranch lands of the Wards after that easement was taken. Ordinarily, this court will dispose of a case on appeal on the theory on which it was presented to the trial court by the parties. Durfee v. Keiffer, 168 Neb. 272, 95 N. W. 2d 618 (1959); Schimonitz v. Midwest Electric Membership Corp., 182 Neb. 810, 157 N. W. 2d 548 (1968). We shall, therefore, dispose of this case on the theory that all appellant asked for and received in the condemnation proceeding was a transmission line easement over the Wards' property, and that no taking of the property itself is involved.

The legal description of the property involved and of the easement area was stipulated between the parties and appears in evidence as exhibits 1 and 1A. The easement extends for 5,108 feet and encompasses an area of 50 feet on each side of the centerline. There have been 5 2-pole structures, 3 3-pole structures, and 9 anchors placed on the Wards' property. The area covered by the easement itself is 11½ acres.

The appraisers appointed by the county judge pursuant to section 76-706, R. R. S. 1943, set the damages sustained by the Wards at $16,000. Appellant Electric Company then appealed to the District Court for Cherry County, where, as provided by statute, the Wards appear and are designated in the pleadings as the plaintiffs, and the Nebraska Electric Generation and Transmission Cooperative, Inc., as the defendant. Trial was had to a jury, which awarded damages to the Wards in the amount of $20,000. Since the jury's verdict exceeded the appraisers' award by more than 15 percent, the trial judge also allowed an attorney's fee for appellees' counsel of $1,600, and also an expert witness' fee of $125, for appellees' appraiser, under section 76-720, R. R. S. 1943.

In its brief on appeal, appellant makes the following assignments of error: (1) The court erred in not grant-

ing a mistrial to appellant; (2) damages allowed to the property owners were excessive; and (3) attorney's fees allowed by the court were excessive. We shall discuss these assignments in the order they are made.

Appellant's first contention that the court erred in not granting its motion for a mistrial is based upon the following events. Prior to the impaneling of the jury, counsel for appellant stated to the court that there had been some indication that certain testimony relative to rerouting or relocation of the transmission line, which counsel felt was improper to present to the jury as not being in issue, might be adduced at the trial. He added that if such occurred, he would move for a mistrial. Nothing further was stated at that time, and no action was taken by the court or counsel. The record reveals, however, that during the course of redirect examination of Allen Ward, the landowner, by his counsel, the following exchange occurred: "Q. (By Mr. Quigley) Did you, Mr. Ward, did you want the power line where it is? MR. OLDS. I object to that as highly improper and not a part of the issues in this case. THE COURT: The objection is sustained. Q. (By Mr. Quigley) Were you consulted by the defendant as to the location of the — the present location of the power line prior to the time of the condemnation? MR. OLDS: Same objection— THE COURT: The objection is sustained. MR. OLDS: (Continuing) Your Honor, and I ask that the jury be dismissed for the purpose of making an objection." The jury was then excused, and counsel then moved for a mistrial on the ground that the questions propounded were improper and prejudicial. The court at that time overruled the motion for a mistrial stating: "There was no, even an attempt, to answer, and the objections to the line of questioning were sustained immediately upon the objection being made, and it is the belief of the Court that no information got to the jury that would prejudice this jury. You may well want an instruction on that particular matter, and the Court will consider giving an

instruction, but the motion for mistrial is overruled. You may bring the jury back in."

Subsequently, the court apparently noticed a juror by the name of O'Kief, who later became foreman of the jury, taking notes. The court informed the jury that note taking was not permitted and confiscated the notes. Among other information appearing in the notes was a statement, "Condemned without consultation of land owner." Counsel argues that the notation referred to makes it obvious that counsel for the landowners did get across to the jury that the property had been condemned without consultation of landowners, and that this was also prejudicial to appellant.

We have held that evidence concerning the location of a transmission line and the possibility of locating elsewhere is not proper evidence in condemnation proceedings. Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209 (1959). The questions asked of witness Ward by his counsel on this subject were unquestionably improper, particularly after the statement of counsel of appellant to the court prior to the impaneling of the jury. However, we believe in this case no prejudice resulted, as the court immediately sustained objections to the questions and the witness was not permitted to answer. The court at that time also informed counsel for appellant that he would consider instructing the jury on that matter if counsel wanted an instruction. Counsel did not avail himself of the offer. The court properly overruled the motion of appellant's counsel for a mistrial.

With reference to the taking of notes by jurors, the Nebraska cases tend to indicate that this practice has never been actually prohibited, although it has been frowned upon, and may, in some cases, constitute prejudicial error. We have recently held that the validity of an objection to the taking of such notes by jurors would seem to be based upon the subsequent use of such notes. Bakhit v. Thomsen, 193 Neb. 133, 225 N. W. 2d 860

(1975). There is no showing in the record whether any of the jurors ever saw the notes in question, or whether juror O'Kief ever communicated the information contained in his notes to any of the other jurors, or whether his notation "Condemned without consultation of land owner" did, in fact, prejudicially influence his own conclusions and the resulting verdict. In this connection, we note that the jury returned its verdict on April 8, 1975, and that appellant's motion for a new trial was argued and overruled on May 23, 1975. Appellant's counsel had over 6 weeks before argument for a new trial to obtain evidence regarding the above matters in order to demonstrate any resulting prejudice. In the absence of a showing of such prejudice, the trial court properly ruled against it on that assignment as set out in its motion for new trial.

We next consider appellant's claim that the damages awarded by the jury in the sum of $20,000 were excessive. The measure of damages for the taking of an easement is the difference in the reasonable market value of the property before and after the taking of the easement. Fulmer v. State, 178 Neb. 664, 134 N. W. 2d 798 (1965); Roush v. Nebraska Public Power Dist., 189 Neb. 785, 205 N. W. 2d 519 (1973). See, also, NJI No. 13.06. The amount of damages sustained in a condemnation action is peculiarly of a local nature and ordinarily is to be determined by the jury. Where the evidence is conflicting this court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. Harmony Lanes v. State, 193 Neb. 826, 229 N. W. 2d 203 (1975); Johnson v. Nebraska Public Power Dist., 187 Neb. 421, 191 N. W. 2d 594 (1971). A verdict may be set aside as excessive only where it is so clearly exorbitant as to indicate that it was a result of passion, prejudice, or mistake or that it is clear that the jury disregarded the evidence or controlling rules of law. Schimonitz v. Midwest Electric Membership Corp., *supra*; Garska v. Harris, 172 Neb. 339, 109 N. W. 2d 529 (1961).

There is a disparity in the testimony as to the size of the property owned by the Wards at the time of the condemnation of the easement. Mr. Ward testified that it was from 460 to 470 acres in size originally and that he had sold off 16 acres before the condemnation, and 4 acres after the condemnation. Willard Burney, who testified for the appellant, testified that the Ward property was 480 acres in size of which 12 acres had been sold prior to condemnation leaving 468 acres remaining. The actual acreage involved in the easement itself is 11½ acres. The remainder of the Ward property, whatever its correct size, is mostly pastureland; but also includes some rough timberland and about 6 acres devoted to buildings. The principal use of the land is for ranching, rather than farming. Two creeks cut across the land adding to its value for residential purposes; and, in fact, there has been in recent years a movement of residents in Valentine to acquire acreages for residential purposes close to the City of Valentine. Prior to the condemnation the Wards had actually sold a number of lots from their property for residential purposes. It was, and is, the intention of the Wards to continue to develop the property for residential purposes; and even a witness for appellant testified that 40 acres of the tract had residential potential. The expert witness for the landowners indicated that about 40 acres of the tract were prime sites for that purpose, and Ward, himself, testified that 9 lots were suitable for acreages. There was evidence that the value of some of the prospective residential areas was substantially reduced by the transmission line, which is quite close to a number of the residential lots. Ray Ballard, the expert witness who testified for the Wards, stated that the value and salability of the lots had been reduced, and that he thought the residential potential of 30 acres had been destroyed.

As is frequently true in cases of this kind, there was a wide disparity as to the difference in value of the land

before and after the taking. Allen Ward, the owner, testified that the property was worth $115,000 before the taking and $70,000 after the condemnation, and that his damages were, therefore, $45,000. The expert witness, Ray Ballard, a local licensed real estate broker with experience in the appraisal of property, testified that the value of the property before the taking was $116,800 and after the taking $84,450, and that the damage to the Wards' property was $32,350. Willard Burney, the appraiser witness for the appellant, with considerable experience in that field, testified that the value of the property before the taking was $75,000, and after the taking $70,200, with the damage to the Wards being $4,800. It is to be noted that the verdict of the jury for $20,000 was less than ½ of Mr. Ward's estimate of damages and was within the range of values established by both appellees' and appellant's witnesses.

In Little v. Loup River Public Power Dist., 150 Neb 864, 36 N. W. 2d 261 (1949), this court was faced with a similar situation of conflicting evidence of damages. We quote from the opinion of the court in that case: "Appellant claims that the verdict is excessive. The rule is that the amount of damages sustained by a landowner for right-of-way condemned across his land is a question of a local nature proper to be determined by a jury of the county, and this court ordinarily will not interfere with the verdict if it is based on the evidence in the case. * * * There was material disagreement of the witnesses as to the market value of the land, both before and after the appropriation of the right-of-way. The qualification of each witness to testify was established. * * * There was no evidence produced to discredit any witness. The testimony was conflicting. It was pertinent to the issue and it was for the jury to say what conclusion should be drawn therefrom. It would be arbitrary and without justification for this court to substitute its judgment for that of the jury. When the evidence is conflicting, the verdict of a jury will not be

set aside unless it is shown to be clearly wrong. * * *
The jury are the judges of the credibility of witnesses
and the weight of their testimony. * * * In Remmenga
v. Selk, ante p. 401, 34 N. W. 2d 757, it is said: 'In test-
ing the sufficiency of evidence to support a verdict it
must be considered in the light most favorable to the
successful party, that is, every controverted fact must
be resolved in his favor and he should have the benefit
of every inference that can reasonably be deduced
therefrom.' It cannot be said that the verdict in this
case is excessive.

"It is said by appellant that the verdict was the result
of passion and prejudice, but it fails to indicate anything
in the record of the case tending to support this charge.
It will not be presumed that passion and prejudice in-
fluenced the minds of the jurors. It must be made to
appear from the record before the verdict will be dis-
turbed by this court."

In the instant case, the jury was permitted to visit
and inspect the property. We have held that the fact
the jury had the opportunity to visit the property is of
significance in determining whether the verdict was ex-
cessive. Johnson v. Nebraska Public Power Dist., *supra*.
We are unable to say in this case that the verdict of the
jury was clearly wrong and that the damages awarded
were excessive.

Although counsel for appellant raised no objection at
the time of the hearing for the allowance of attorney's
fees to counsel for the landowners, he now contends
that the award of $1,600 was excessive. It is true that
counsel for the landowners submitted no itemized state-
ment of services in connection with his request for a
fee, showing with specificity the time spent on various
phases of the litigation and his charges therefor, but
he did advise the court that he had spent approximately
20 hours in preparation for the trial and was engaged
in the trial itself for 2 days. The trial judge did not
explain the basis on which he arrived at the $1,600

figure, but we cannot say the award was excessive. Counsel did succeed in raising the amount of the award of the appraisers from $16,000 to a final award by the jury of $20,000. In Schimonitz v. Midwest Electric Membership Corp., *supra,* the award in the county court was $5,795.50 and the verdict of the jury was $9,840 or an increase of $4,044.50. The opinion in that case does not indicate the time involved for preparation, but there was a trial of 2 days duration. The court determined that a reasonable fee was $1,500. We realize that we cannot determine the amount of attorney's fees to be awarded by color matching of cases, nevertheless, that case is persuasive, and we conclude that the award of $1,600 in this case was not inappropriate. See, also, Hughes Farms, Inc. v. Tri-State Generation & Transmission Assn., Inc., 182 Neb. 791, 157 N. W. 2d 384 (1968); Johnson v. Nebraska Public Power Dist., *supra.*

Having determined that all appellant's assignments of error are without merit, we affirm the judgment of the District Court.

AFFIRMED.