ELIZABETH ANN WELLMAN, APPELLEE, V. WILLIAM H. BIRKEL ET AL., APPELLANTS, OLIVIA A. BIRKEL, PERSONAL REPRESENTATIVE OF THE ESTATE OF PETER M. BIRKEL, DECEASED, APPELLEE.

367 N.W.2d 716

Filed May 17, 1985.   No. 83-725.

James M. Egr of Egr & Birkel, for appellants.

Larry J. Karel of Karel Law Offices, for appellee Wellman.

KRIVOSHA, C.J., WHITE, and GRANT, JJ., and BRODKEY, J., Retired, and WOLF, D.J.

BRODKEY, J., Retired.

This action involves an alleged farming arrangement between the plaintiff, Elizabeth Ann Wellman, and the defendants Peter M. Birkel, William H. Birkel, and Max Birkel. The plaintiff had previously been married to Michael Birkel, who was the son of Peter Birkel and the brother of William and Max Birkel.

Subsequent to their marriage in 1963, Michael and Elizabeth acquired certain real estate, to wit, a 320-acre farm known as the Valley Farm and an 80-acre farm known and referred to as the Brokevelt 80, and they also rented an 80-acre tract known as the Hanus 80. They also acquired farm machinery and equipment, both alone and with Michael's father, Peter, and had a farming relationship until Michael's death in 1973. Prior to Michael's death, however, he was incapacitated, and the farming of the properties referred to was performed by the father, Peter, and the brothers, William and Max, under an agreement between them that they would use the equipment, tools, and implements belonging to the plaintiff and her husband both on their land and on other lands farmed by the defendants.

Under the arrangement existing between them after Michael's death, all of the crops were to go to the plaintiff, the father and brothers having the use of the equipment of the plaintiff. This arrangement was changed in 1977 to provide for a 50-50 sharecrop basis on the Valley Farm and the Brokevelt 80, and with all the tenant's share of the rented Hanus 80 going to the plaintiff, the father and the brothers receiving the use of the machinery for their services. Under the arrangement at that time, plaintiff was required to pay one-half of the crop expense and all of the upkeep and repairs on her machinery.

However, on January 10, 1978, the defendants entered into written leases with plaintiff for the Valley Farm and the Brokevelt 80 with respect to the 1978 and 1979 crop years. Both tracts were irrigated and rented on a 50-50 sharecrop basis. The plaintiff continued to rent the Hanus 80 from John Hanus, and the defendants farmed that tract for the plaintiff, who received the entire crop, with the defendants receiving the use of the machinery owned totally or partially by the plaintiff and

inherited from her deceased husband, Michael Birkel. Elizabeth married her present husband, Alvin Wellman, in June of 1978, and at that point the relationship between the parties commenced to deteriorate.

A dispute arose between the parties at the expiration of the lease period, which eventually culminated in the filing of this action in the district court for Butler County, Nebraska. The action referred to contained three counts or causes of action.

In the first cause of action the plaintiff refers to the real estate owned and leased in Butler County, Nebraska, and alleges that she had entered into written leases with the defendants on such real estate; and further asserts that prior to the 1979 crop year, she entered into an oral amendment of the written leases whereby the defendants agreed to pay to the plaintiff the sum of $35 per acre for 60 acres of pasture included in the acreage covered by the leases. Also included in her first cause of action is the claim that defendants harvested crops in 1979 on the real estate in question but have failed and refused to deliver her share to her or to make payment to plaintiff pursuant to the lease agreements, and have failed to provide a true, correct, and complete accounting of her share of the crops for the crop year 1979. Whereupon, she prays for an accounting and judgment against the defendants on the claims contained in her first cause of action.

In her second cause of action she alleges that defendants were in possession of certain farm machinery, equipment, and tools under a certain arrangement with her and that she has made demand upon the defendants for the return of the same and also for return of 9,936.76 bushels of corn that she was entitled to as the owner, and she seeks judgment for possession of such property.

In her third cause of action plaintiff alleges that during the years 1978 and 1979, the defendants harvested certain crops from the real estate leased or subleased to them and stored in a grain bin on her property but that the grain was not properly stored and the defendants failed to properly dry and level the same, and that by reason thereof she suffered damages in the amount of $2,424.18, for which she prays judgment.

The defendants, in their answer to the amended petition,

generally deny the allegations contained in the three separate causes of action.

Peter Birkel died after suit was filed, and Olivia Birkel, his personal representative, was joined as a necessary party. The trial court, however, granted a directed verdict in favor of Olivia and dismissed her as a defendant because of lack of evidence presented against Peter Birkel. Prior to trial to the jury, the parties to the action entered into several stipulations, one of which was that, with reference to the replevin action contained in the second cause of action, the parties agreed all of the farm equipment and machinery referred to, except a John Deere 4020 tractor, would be returned to the plaintiff within 30 days of the close of the trial. They also agreed that plaintiff could introduce evidence as to the price of grain at the Bellwood elevator at the date the grain was delivered to the elevator and on the day of the trial. The judge also instructed the jury that the parties had agreed that there were four separate items in dispute in the lawsuit, the first being the matter of the pasture rentals; the second being the grain which the plaintiff alleges belongs to her and which the defendants refuse to deliver; the third, a 4020 tractor which was held by the defendants until April 1981; and the fourth, damage to grain in storage.

Following a trial at which evidence was adduced and presented for consideration of the jury, the jury returned its verdict on May 24, 1983, generally in favor of the plaintiff and against the defendants, and specifically on the issues as follows.

On the issue of damages for wrongful detention of plaintiff's John Deere 4020 tractor, the jury found for the plaintiff and against the defendants William H. Birkel and Max Birkel in the sum of $1,200; on the issue of damages caused to the plaintiff's grain, the jury found for the plaintiff and against defendants William H. Birkel and Max Birkel in the sum of $1,212.09; on the issue of the pasture rent due plaintiff, the jury found for the plaintiff and against the defendant William H. Birkel in the sum of $289.44, and for the plaintiff and against the defendant Max Birkel in the sum of $289.44; on the issue of the ownership of grain, the jury found for the plaintiff and against the defendants William H. Birkel and Max Birkel in the sum of $24,543. The court entered judgment on the verdict and also

found that the plaintiff was entitled to prejudgment interest on the amount of grain held at the Bellwood Co-op Elevator in the amount of 4,968.40 bushels times $3.03, which equals $15,054.25, with interest thereon from the 7th day of February 1980 at the rate of 12 percent per annum. The court also awarded prejudgment interest at the rate of 12 percent per annum from the 1st day of March 1980 on the $1,200 damages awarded for wrongful detention of the tractor.

Defendants then perfected their appeal to this court, assigning as error that (1) the preponderance of the evidence was so clearly contrary to the findings that the jury should have returned the verdict in favor of the defendants on all issues; (2) the award is so clearly exorbitant as to indicate it was the result of the jury's disregarding the evidence of the rules of law; and (3) the court failed to determine that a reasonable controversy existed and, therefore, should not have awarded prejudgment interest.

The instant case represents a classical case where the evidence is contradicted on almost every issue. To set out the conflicting claims and testimony of the parties in detail in this opinion would unduly lengthen the opinion. Suffice it to say that there appears in the record sufficient evidence to justify the jury in reaching the result it did on each of the issues in question. Defendants admit that they owe plaintiff 4,968.40 bushels of grain and that they had placed it in the Bellwood elevator in the joint names of the defendants. One of the reasons the jury may have looked askance at the testimony presented by the defendants is because of the testimony given during the trial by the defendant William Birkel, who testified that he had attended a meeting concerning the 1978 grain claimed in the replevin action and that at that meeting the defendants had a "distinct battle plan worked out" to force plaintiff to release a mortgage on his father's farm in exchange for the grain. The plan called for a prerelease of the mortgage, which the plaintiff rejected but did make a counteroffer of a simultaneous release. William Birkel testified that even a simultaneous release was not acceptable because it was not part of the "battle plan," so he walked out of the meeting.

Also, on the issue of pasture rent due, plaintiff testified as to

the provision in the lease which allowed the parties to negotiate for pasture rent, and, furthermore, testimony was presented as to an oral agreement between the parties. This, however, was denied by the defendants.

On the issue of the detention of the John Deere tractor, defendants admitted to possession of the tractor, thus the issue before the jury was the amount of damages for the plaintiff. Also, on the issue of damages sustained to stored grain, plaintiff testified about the storage practices employed by defendants in previous years; and while defendants denied improper handling and asserted that any duty and care terminated at the close of the lease, the evidence clearly presented an issue for the jury's decision. Defendants have failed to show that the verdict is clearly against the weight of the evidence; in line with established law this court must consider the evidence in the light most favorable to the plaintiff under the circumstances of this case. See *Schimonitz v. Midwest Electric Membership Corp.*, 182 Neb. 810, 157 N.W.2d 548 (1968).

This is also true with regard to the claim that the amount of damages awarded by the jury is exorbitant. The established rule is that the amount of damages awarded by a jury will not be set aside as exorbitant unless it is so clearly excessive as to indicate that it was the result of passion, prejudice, mistake, or disregard of the evidence or applicable rules of law. *Siciunas v. Checker Cab Co., Inc.*, 191 Neb. 766, 217 N.W.2d 824 (1974); *Schmidt v. Richman Gordman, Inc.*, 191 Neb. 345, 215 N.W.2d 105 (1974); *Winston v. Davis*, 187 Neb. 522, 192 N.W.2d 413 (1971); *Schimonitz v. Midwest Electric Membership Corp., supra.*

A review of the record convinces us that the damages awarded were not exorbitant. First, on the action for pasture rent, the jury awarded damages as measured by the oral agreement of the parties, which is an appropriate measure of damages in a contract action. Defendants failed to show that this measure of damages was inappropriate and resulted in an excessive award. Plaintiff contends on appeal that the award was improperly determined and should be increased. However, this court will not address that issue because of the fact that

plaintiff did not cross-appeal for additional damages.

Also, in computing the damage to the corn stored and cared for by the defendants, the jury awarded damages equal to the financial deduction taken by the elevator at the time the corn was delivered. This was not so clearly excessive as to be contrary to the finding of negligence by the jury. See *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983). Therefore, the award will not be disturbed.

With regard to the corn which was withheld for the purpose of inducing a release of the mortgage, the jury returned a verdict for the plaintiff for 8,100 bushels at the price per bushel in effect at the time of the trial. The explanation given for the award of 8,100 bushels was that the corn came from the Hanus 80, which was, according to the testimony, all to be the property of the plaintiff and not subject to the 50-50 split. Based on the evidence in the record, the award of the jury was not exorbitant.

With regard to the detention of the tractor in question, the jury found from the evidence that defendants had wrongfully detained the tractor for 1 year and awarded plaintiff the sum of $1,200 as damages based upon evidence of its depreciation. This award appears to be within the statutory provision for replevin matters and should not be set aside. Neb. Rev. Stat. § 25-10,105 (Reissue 1979).

The law is well established in this state that a jury verdict will not be reversed on appeal unless it is clearly erroneous. *Maricle v. Spiegel, supra.* In this case the evidence in most respects was conflicting, and the jury resolved the conflicts.

One further matter remains to be discussed, and that is with reference to the award of prejudgment interest issued by the trial court after the return of the jury verdict. In its judgment the court awarded the plaintiff prejudgment interest on the sum of $15,054.25, computed on the basis of 4,968.40 bushels of corn remaining at the elevator at the established price of $3.03 per bushel. Defendants contend that the award of prejudgment interest was error.

The general rule in Nebraska is that where property is not returned in a replevin action, the measure of damages is the value of the property, together with interest, from the date of the unlawful taking. *Hickman-Williams Agency v. Haney*, 152

Neb. 219, 40 N.W.2d 813 (1950). Where the property is returned in a replevin action, the party recovering possession of the property is entitled to recover as damages any deterioration or depreciation in the value which has taken place during the wrongful detention. *White Motor Credit Corp. v. Sapp Bros. Truck Plaza, Inc.*, 197 Neb. 421, 249 N.W.2d 489 (1977). See, also, *Morfeld v. Bernstrauch*, 216 Neb. 234, 343 N.W.2d 880 (1984).

In the instant replevin action defendants had wrongfully retained all of the corn produced on the Hanus 80. The jury determined the amount of that corn to be 8,100 bushels. The court only awarded prejudgment interest on the 4,968.40 bushels that the defendants admitted to have retained. Plaintiff argued in her brief that she should have received prejudgment interest on the entire 8,100 bushels. However, she has neglected to cross-appeal and assign the inadequacy of the prejudgment interest as error. The general rule is that the court will only consider errors that are assigned and discussed. Neb. Rev. Stat. § 25-1919 (Reissue 1979); *Tautfest v. Tautfest*, 215 Neb. 233, 338 N.W.2d 49 (1983). Therefore, we will not consider whether the court's award of prejudgment interest is inadequate. The trial court's award of prejudgment interest on the 4,968.40 bushels of corn is affirmed.

The court also awarded prejudgment interest on the damages which resulted from the defendants' failure to return a John Deere 4020 tractor for a period of 1 year. Although the defendants assigned prejudgment interest as error, they failed to discuss in their brief or argue to the court the prejudgment interest that was awarded on the damages to the tractor. Only assignments of error which are argued and discussed may be considered by this court on appeal. Neb. Ct. R. 9D(1)d (rev. 1983). See, also, *Stungis v. Union Packing Co. of Omaha, Inc.*, 196 Neb. 126, 241 N.W.2d 660 (1976). Since the defendants did not discuss it in their brief, we will not consider whether the award of prejudgment interest on the amount of damages to the tractor was correct.

In view of what we have stated above, we believe that the verdict of the jury and the judgment entered thereon by the court are correct and must be affirmed.

AFFIRMED.